■ In the Matter of JOYCE WARREN, Petitioner, v JOSEPH D'ELIA, as Commissioner of the Nassau County Department of Social Services, et al., Respondents.—Proceeding pursuant to CPLR article 78 to review a determination of the respondent New York State Commissioner of Social Services, dated February 24, 1984, and made after a statutory fair hearing, which affirmed a determination of the local agency, finding that the petitioner had received an overpayment of public assistance and directing that the agency recover the overpayment in accordance with section 352.31 (d) of the department's regulations (18 NYCRR 352.31 [d]).

Determination confirmed and proceeding dismissed on the merits, without costs or disbursements.

At issue in this proceeding is the propriety of a directive issued by the Nassau County Department of Social Services (hereinafter the local agency), which was upheld by the respondent State Commissioner, to recoup from the petitioner an alleged overpayment of public assistance. The overpayment claim was predicated on the fact that the petitioner's household budget had been determined on the basis of a household consisting of the petitioner and her three children. However, according to the local agency, one of those three children, Wesley, had left the petitioner's household in February 1983 to live with his father in St. Louis, and did live in St. Louis until June 1983.

18 NYCRR 352.30 provides, in pertinent part that: "Persons included in the budget. (a) For budgetary purposes, the number of persons in the public assistance household shall be those persons that the applicant, recipient or [their] representative indicates desire to receive public assistance and who

reside together in the same dwelling unit * * * The public assistance household may also include persons who are temporarily absent from such [unit] such as children or minors attending school away from home whose full needs are not otherwise met".

At the statutory fair hearing, the petitioner contended that Wesley had only moved out temporarily and that during his absence his full needs were not otherwise met. The petitioner testified that Wesley's father was unemployed and unable to provide for Wesley's needs and that she sent money for Wesley's needs. She claimed that she sent Wesley $80 per month by giving the money to Wesley's grandfather, who would mail it to Wesley's "father, wherever, he'd tell him what hotel or wherever he was staying". The petitioner failed to produce any receipts. The grandfather did not testify and no written documentation was produced that he sent money to Wesley's father. Although the petitioner testified that she advised the agency in February 1983 of Wesley's move to St. Louis, the agency's records did not reflect that alleged communication. Its records showed that it did not learn until June 20, 1983, that Wesley had withdrawn from the school district and moved to St. Louis in February 1983. The agency's witness testified that she received this information during a telephone conversation with officials of the Roosevelt School District on June 20, 1983, during a recertification process. The agency's "Comment Sheet" entry for June 20, 1983, shows that this conversation was triggered by "a recent home visit". Although at the hearing the petitioner produced a handwritten letter she wrote to the agency, advising it that Wesley went to St. Louis in February 1983 because she believed that a change of environment might help Wesley, that same letter stated that he had returned to New York on June 17 for the summer and would be returning to St. Louis in August. The letter was not dated, but the petitioner testified that it had been written on June 29. Thus, the letter was written after the June 20 date on which the agency claimed to have first learned that Wesley left the household for St. Louis.

Under these circumstances, the State Commissioner's determination that Wesley was not merely "temporarily absent" from the household pursuant to 18 NYCRR 352.30 (a), is supported by substantial evidence *(see, Matter of Portugal v Webb,* 91 AD2d 997), and we find no reason to disturb his resolution of the issues of credibility *(see, Matter of Collins v Codd,* 38 NY2d 269). Gibbons, J. P., Thompson, Niehoff and Rubin, JJ., concur.